# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| MARK J.,[1]<br><br>  Plaintiff,<br><br>  v.<br><br>LELAND DUDEK, Acting Commissioner of the Social Security Administration,[2]<br><br>  Defendant. | Case No.:  3:23-cv-02173-VET<br><br>**ORDER AFFIRMING THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

---

[1]  Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).
[2]  Leland Dudek is substituted for Kilolo Kijakazi pursuant to Fed. R. Civ. P. 25(d).

## I. INTRODUCTION

On November 28, 2023, Plaintiff Mark J. filed a complaint challenging Defendant Commissioner's ("Commissioner" or "Agency") denial of his application for disability insurance benefits and supplemental security income. Doc. No. 1. In accordance with the Court's Scheduling Order, the parties timely filed opening and responsive briefs. *See* Doc. Nos. 16, 18, 21. Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, the Court **AFFIRMS** the Commissioner's final decision.

## II. BACKGROUND

### A. Procedural History

On February 25, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income under the Social Security Act. AR 270–274, 275–285, 290–292.[3] Plaintiff alleged a disability since January 19, 2019. The Agency denied Plaintiff's application on initial review and on reconsideration. AR 143–148, 152–158. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and on September 29, 2022, the ALJ held a hearing. AR 14–44. On November 14, 2022, the ALJ found that Plaintiff was not disabled from January 19, 2019 through the date of his decision. AR 120–131. Plaintiff requested a review of the ALJ's decision, and the Appeals Council denied the request on October 3, 2023. AR 1–3. Plaintiff commenced this action seeking judicial review pursuant to 42 U.S.C. § 405(g). Doc. No. 1.

---

[3] "AR" refers to the Administrative Record filed on January 29, 2024. Doc. Nos. 9, 10, 11. The Court's citations to the AR reference pages on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

### B. Summary of the ALJ's Decision

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 19, 2019, the alleged onset date. AR 122–123. At step two, the ALJ found that Plaintiff's severe impairments included morbid obesity, diabetes mellitus, varicose veins, and status-post varicose vein surgery. *Id.* The ALJ further found that the following impairments were non-severe: cataracts and status-post cataract surgery, status-post left wrist surgery, iron deficiency anemia, nausea, secondary polycythemia, foot issues, hypertension, hyperlipidemia, benign pulmonary nodules, small hiatal hernia, asthma, sleep apnea, acid reflux, depressive disorder, and anxiety disorder. AR 123–124. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to those in the Commissioner's Listing of Impairments. AR 125–126. Before proceeding to step four, the ALJ further determined that Plaintiff's impairments left him with the residual functional capacity ("RFC") to perform light work except the claimant can never climb ladders, ropes, or scaffolds, can frequently climb ramps and stairs, and can frequently balance, stoop, kneel, crouch, and crawl. AR 126. The ALJ further determined that Plaintiff should avoid concentrated exposure to work hazards such as dangerous, moving machinery and should avoid all exposure to unprotected heights. *Id*. Finally, the ALJ found that Plaintiff should avoid concentrated exposure to dusts, gases, pollens, poorly ventilated areas, and other pulmonary irritants. *Id*.

At step four, relying on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a composite job consisting of a hotel clerk and night auditor. AR 128–129. The VE testified that, "if an individual had the claimant's residual functional capacity, such an individual could perform the claimant's past relevant work." AR 129. The ALJ continued to step five and found that Plaintiff could perform other jobs that exist in the national economy such as rental clerk, marker, and

router. AR 129–130. Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. AR 130.

## III.  STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotations omitted). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Id.* at 1159 (internal quotations omitted) (quoting *Biestek*, 587 U.S. at 103); *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (internal quotations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in two respects. First, Plaintiff argues that the ALJ failed to properly address the severity of Plaintiff's foot issues. Second, Plaintiff asserts that the ALJ failed to evaluate the "opinion" of Plaintiff's treating sources at the Kafri Heart and Vascular Clinic. *See generally* Doc. No. 16. The Court addresses each in turn.

### A. The ALJ's Analysis of Plaintiff's Foot Issues

Per Plaintiff, the ALJ erred in concluding that Plaintiff's foot issues were non-severe because he failed to address medical records noting diagnoses of left and right heel fissures, foot pain, severe pronation deformity of the left and right foot, and Plaintiff's use of a cane for ambulation. Doc. No. 16 at 4. Plaintiff also contends that his bilateral foot issues in combination with his morbid obesity should have resulted in further limitations on his ability to walk and stand when the ALJ was making the RFC determination. *Id*. at 5. Defendant argues in response that the ALJ reasonably determined that physical examinations did not show signs of significant musculoskeletal deficits, supporting that Plaintiff's foot issues were not severe. Doc. No. 19 at 1.

#### 1. Applicable Standard

Step two of the Commissioner's five-step evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). "[A]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (citing *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). The purpose is to identify at an early stage those claimants whose medical impairments are so slight that it is unlikely

they are disabled even if their age, education, and experience is considered. *Bowen*, 482 U.S. at 153.

### 2. Analysis

The ALJ found that Plaintiff's foot issues were non-severe based on Plaintiff's physical examinations, which showed no significant musculoskeletal or extremity deficits. AR 123 (citing AR 568, 658, 718, 857). Plaintiff cites medical records from Dr. Rana Mansour regarding bilateral foot issues and use of a cane to suggest this conclusion is erroneous. Doc. No. 16 at 4–5.

However, the evidence that Plaintiff identifies pertains to routine treatment provided by Dr. Mansour for debridement of toenails, heels, and calluses, along with removal of ingrown nails.[4] AR 976–991, 1004–1005. None of these treatment records state or suggest that Plaintiff suffers from any significant limitations as a result of his foot issues or any limitations that were not otherwise resolved by the prescribed treatment. *See id.* Furthermore, the records cited by the ALJ support his conclusion that the foot issues are not severe. For instance, those records show a normal diabetic foot evaluation in April 2021, no pedal edema and normal nails and digits as of May 2021, and normal extremities again in March 2022. *See* AR 568, 718, 857. Indeed, other than on a "busy day," Plaintiff denies having pain in his feet. AR 31 ("Q: Okay. Now, do you have any pain in your feet? A: Not unless I'm -- my -- I've been -- has -- had a busy day or something, but no, not -- not usually."). To the extent Plaintiff suggests that his foot issues, in combination with his morbid obesity, require a finding of severity, beyond the argument of counsel, Plaintiff cites no records or evidence to support this conclusion. *See* Doc. No. 16 at 5.

Plaintiff also emphasizes that these same records note Plaintiff's use of a cane. *Id.* at 4–5. A hand-held assistive device represents a functional limitation only if it is medically

---

[4]  In explaining why he sees a podiatrist, Plaintiff testified that he has trouble clipping his toenails and his right foot leans to the right. AR 30.

required. *See Sou v. Saul*, 799 F. App'x 563, 564 (9th Cir. 2020); *Beatrice D. A. v. Kijakazi*, Case No. 2:22-cv-01207-RAO, 2023 U.S. Dist. LEXIS 68797, at *3 (C.D. Cal. Apr. 19, 2023) ("The use of a hand-held device such as a cane is a functional limitation only if it is medically required."); *Quintero v. Colvin*, Case No. 2:13-cv-00478-SKO, 2014 U.S. Dist. LEXIS 137518, at *10 (E.D. Cal. Sept. 29, 2014) (same). And "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 SSR LEXIS 6 (1996).

Here, Dr. Mansour's records do not indicate that the cane is medically necessary or describe the circumstances when it must be used. Nor does Plaintiff point to any other record that provides such information. And Dr. Mansour's observations that Plaintiff used a cane during his visits is not sufficient. *See Cashin v. Astrue*, No. EDCV 09-161 JC, 2010 U.S. Dist. LEXIS 16809, at *43 (C.D. Cal. Feb. 24, 2010) (a doctor's observation of claimant's use of cane during examination was not "an objective finding that plaintiff's cane was medically required"); *Flores v. Colvin*, No. 1:14-cv-02096-SKO, 2016 U.S. Dist. LEXIS 62544, at *47 (E.D. Cal. May 10, 2016) (finding "no medical documentation establishing the need for an assistive device" where all references to claimant's use of cane were "traceable to Plaintiff's self-reports and to his medical sources' observations that he presented with an assistive device").

Moreover, the Court notes that the ALJ addressed Plaintiff's use of an assistive device in the context of discussing Plaintiff's claim that he was severely limited in his ability to walk and used a walker for ambulation. AR 128. Specifically, the ALJ noted that while Plaintiff reported use of a walker to his treatment provider on isolated occasions, there was no indication in the record that a medical provider prescribed or recommended

use of a walker. *Id.* Further, the ALJ found that physical examinations "showed normal strength, range of motion, use of extremities, and normal gait." *Id.*

Lastly, even if the ALJ erred, the Court finds that any error at step two was harmless. The ALJ concluded at step two that Plaintiff suffered from severe physical impairments, allowing the sequential evaluation process to continue to the next steps. Hence, once Plaintiff prevailed at step two, it made no difference for the ALJ's ensuing analysis whether his medically determinable impairments were previously considered "severe" since the ALJ was required to consider *all* impairments—severe and non-severe—in his RFC analysis. *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, [i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.") (internal quotations and citation omitted); *Jennifer T. v. O'Malley*, No. 2:23-cv-03587-MAA, 2024 U.S. Dist. LEXIS 18998, at *9–*10 (C.D. Cal. Feb. 2, 2024) (holding that ALJ's finding that mental impairments were non-severe did not warrant reversal because "the ALJ resolved the severity step in Plaintiff's favor by finding that Plaintiff did have other severe impairments," and therefore "the classification of Plaintiff's mental impairments as non-severe could not have prejudiced her") (internal citation omitted). And the ALJ did just that—he considered all severe and non-severe impairments when determining the RFC. AR 123, 127–128 ("limitations are supported by the claimant's diagnosed obesity and diabetes mellitus, but with intact musculoskeletal, extremity, cardiovascular, and neurological findings throughout the period at issue"). In short, where a claimant prevails at step two and the ALJ considers all impairments—regardless of severity—in the subsequent steps, an ALJ's failure to consider an impairment "severe" is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

B.  **Evidence from Treating Sources at The Kafri Heart and Vascular Clinic**

Plaintiff also contends that the ALJ erred in his evaluation of the "opinions" purportedly offered by treating sources at the Kafri Heart and Vascular Clinic. Doc. No. 16 at 5. Plaintiff refers to notes from several visits to Kafri Heart and Vascular Clinic, during which "treating sources" recommended that Plaintiff keep his legs elevated, use compression stockings, and engage in regular walking. Doc. No. 16 at 6 (citing AR 819, 718, 940). The ALJ did not directly address each of these visits and associated recommendations. *See generally* AR 122–128. Plaintiff argues this was a harmful error because the recommendations reflect limitations that have "vocational ramifications," and were not included in the RFC assessment or presented as hypothetical questions to the VE. Doc. No. 16 at 7–8. Defendant argues that the notes constitute "other medical evidence," not medical opinions, and therefore did not need to be evaluated for persuasiveness. Doc. No. 18 at 6. The Court agrees with the Commissioner.

1.  **Applicable Standard**

Applicable Agency regulations provide that a "medical opinion" is a statement from a medical source about (i) what a claimant can still do despite his or her impairment(s) *and* (ii) whether the claimant has one or more impairment-related limitations or restrictions in the ability to perform certain demands of work activities, i.e., physical, mental, etc. 20 C.F.R § 404.1513(a)(2). In contrast, "other medical evidence" is "evidence from a medical source that is not objective medical evidence or a medical opinion," including judgments about the nature and severity of a claimant's impairments, medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis. 20 C.F.R § 404.1513(a)(3).

With respect to medical opinions, an ALJ must evaluate their persuasiveness by considering specified factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). "Consistency means the extent to which a medical

opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (quoting *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)). "Supportability focuses on whether a medical source supports a medical opinion by explaining the relevant objective medical evidence." *Id.* An ALJ "must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings." *Id.*

### 2. Analysis

The Court finds that the evidence cited by Plaintiff from the Kafri Heart and Vascular Clinic constitutes "other medical evidence" and not "medical opinion" as that term is defined by applicable Agency regulations. *See* 20 C.F.R § 404.1513(a)(2)–(3). For instance, Plaintiff cites records that show: (1) a stress echocardiograph and related findings (AR 726–727); (2) consult notes recommending that Plaintiff continue to take blood pressure medication and emphasizing the importance of a low-sodium diet and exercise (AR 734–739); (3) consult notes recommending continued use of a CPAP machine and a healthy diet and exercise (AR 728–730); and (4) consult notes indicating Plaintiff will proceed with a radiofrequency vein ablation procedure in the right leg and left leg, respectively (AR 722–724; 731–733). Additionally, the Kafri Heart and Vascular Clinic records from May 2021, September 2021, and November 2021 are treatment notes by various treating sources that examined Plaintiff and recommended leg elevation, compression stockings, exercise, and weight loss following the vein ablation procedures and to manage symptoms. *See* AR 718–719, 818–820, 939–941. None of the treating sources at the Kafri Heart and Vascular Clinic comment, let alone opine, on what Plaintiff can still do despite any specified impairments or whether Plaintiff suffers from limitations or restrictions that impact his ability to perform the physical, mental, or other demands of work.

Also, the Court finds Plaintiff's reliance on *Allen T. v. Comm'r of Soc. Sec.*, No. C20-1257-MLP, 2021 U.S. Dist. LEXIS 89396, at *8 (W.D. Wash. May 11, 2021), unpersuasive. In *Allen T.*, the examination notes at issue were prepared by a doctor that examined and completed a form opinion describing the plaintiff's symptoms and limitations, including what work the plaintiff could still do. *Id.* at *7. The ALJ evaluated the doctor's opinions and found them to be consistent with and supported by examination notes. The issue in *Allen T.* was not whether the ALJ failed to consider the persuasiveness of the doctor's opinions, but rather whether the ALJ should have also evaluated the notes prepared by that same doctor. Thus, the scenario presented in *Allen T.* is markedly different from the circumstances here, where there is no medical opinion by any doctor and instead only treatment notes from various sources.

In sum, the ALJ was not required to evaluate the persuasiveness of the Kafri Heart and Vascular Clinic records because they represent "other medical evidence." *See Janice H. v. O'Malley*, No. 22-cv-1833 W (MSB), 2024 U.S. Dist. LEXIS 47588, at *3 (S.D. Cal. Mar. 18, 2024) (adopting report and recommendation finding that medical treatment notes that do not address judgment about Plaintiff's work limitations or restrictions are not evaluated as "medical opinions"); *see also Rodin v. Comm'r of Soc. Sec.*, No. 1:21-cv-00900-SAB, 2023 U.S. Dist. LEXIS 78913, at *37 (E.D. Cal. May 4, 2023) (finding records were "other medical evidence" due to the "absence of sufficient specified statements about what Plaintiff can still do or specified functional limitations").

## V. CONCLUSION

Based on the foregoing reasons, the Court **AFFIRMS** the Commissioner's final decision. Accordingly, **IT IS HEREBY ORDERED** that judgment be entered in favor of Defendant Commissioner of the Social Security Administration and against Plaintiff. The Clerk of the Court is directed to close this action.

**IT IS SO ORDERED.**

Dated: March 14, 2025

Honorable Valerie E. Torres
United States Magistrate Judge